UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS PENSION TRUST OF NORTHERN CALIFORNIA, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>OTAVILLA MECHANICAL CONTRACTORS INC.,<br><br>          Defendant. | Case No. 23-cv-00736-JSC<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 18 |

## INTRODUCTION

Plaintiffs, several employee benefit plans, including Sheet Metal Workers Pension Trust of Northern California, and Trustees Rick Werner and Sean O'Donoghue, allege Defendant Otavilla Mechanical Contractors, Inc. failed to report and pay contributions for hours employees worked, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Dkt. No. 1 ¶ 13.)[1] Plaintiffs' motion for default judgment is now before the Court. (Dkt. No. 18.) After carefully reviewing Plaintiffs' written submission, the Court GRANTS Plaintiffs' motion for default judgment.

## BACKGROUND

**A. Complaint Allegations**

Plaintiffs include employee benefit plans created by a written Trust Agreement under § 302 of the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. § 186, and §§ 3, 4 and 502 of ERISA, 29 U.S.C. §§ 1002, 1003 and 1132. (Dkt. No. 1 ¶¶ 1-4.) Plaintiffs are Trustees of

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  the Sheet Metal Workers Pension Trust of Northern California; Sheet Metal Workers Local 104
2  Health Care Trust; Sheet Metal Workers Local 104 Supplemental Pension Fund; Sheet Metal
3  Workers Local 104 Vacation-Holiday Savings Fund; Sheet Metal Workers Local 104 and Bay
4  Area Industry Training Fund (collectively the "Trust Funds"). (Dkt. No. 1 ¶ 1.) Each Trust Fund
5  is administered by a Board of Trustees, which has authority to bring an action in the name of the
6  Trust Funds. (*Id.*) Collectively, these parties are all referred to as "Plaintiffs." Defendant is "an
7  employer by virtue of ERISA § 3(5), 29 U.S.C. § 1002(5), and NLRA § 2(2), 29 U.S.C. § 152(2)."
8  (Dkt. No. 1 ¶ 2.)

9  Defendant utilized the Sheet Metal Workers International Association Local Union No.
10 104 ("Union") as its bargaining agent and agreed to abide by the terms of the Bargaining
11 Agreement. (Dkt. No. 1 ¶ 9.) The Bargaining Agreement requires Defendant make employer
12 contributions for hours worked by employees to the Trust Funds. (Dkt. No. 1 ¶ 11.) Defendant
13 has not complied with the terms of the Subscription Agreement, and the Trust Agreement
14 incorporated therein, because it failed to report and pay contributions from January 2022 through
15 July 2023. (Dkt. No. 1 ¶ 13; Dkt. No. 18 at 17-18.) The agreements entitle Plaintiffs to liquidated
16 damages and interest for unpaid contributions at a predetermined rate. (Dkt. No. 1 ¶¶ 11, 14-15;
17 Dkt. No. 18 at 16-19.) Defendant has not paid liquidated damages or interest owed. (Dkt. No. 1 ¶
18 14; Dkt. No. 18 at 17-18.)

19 Plaintiffs' counsel contacted Defendant regarding delinquent payments and eventually sent
20 a demand letter for payments owed on March 21, 2022. (Dkt. No. 19-1 at 7.) James Michael
21 Allivato, the owner and chief executive officer of Defendant corporation, disputed the obligation
22 to pay. (Dkt. No. 19 ¶¶ 9-11.) This dispute led to an appeal to the Union's Board of Trustees that
23 confirmed Defendant's obligation to pay, after which Defendant requested a payment plan. (Dkt.
24 No. 19 ¶¶ 11-12; Dkt. No. 19-1 at 9.) Plaintiffs' council offered Defendant a payment plan and
25 requested further outstanding contributions. (Dkt. No. 19 ¶ 12; Dkt. No. 19-1 at 12.) Defendant
26 stopped responding. (Dkt. No. 19 ¶ 15. ) After numerous unavailing attempts to contact
27 Defendant, Plaintiffs filed this matter. (Dkt. No. 19 ¶¶ 15, 16.)
28 //

**B. Procedural Background**

Plaintiffs filed suit on February 17, 2023. (Dkt. No. 1.) Defendant failed to answer the complaint and, at Plaintiffs' request, the clerk entered the default on May 30, 2023. (Dkt. No. 15.) Plaintiffs subsequently filed the now pending motion for default judgment. (Dkt. No. 18.) Defendant did not respond.

## LEGAL STANDARD

After entry of default, a court may exercise discretion to grant default judgment on the merits of the case. Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The complaint's factual allegations regarding liability are deemed admitted by the non-moving party and are accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Courts apply the *Eitel* factors, detailed below, to determine if default judgement is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## DISCUSSION

**A.     Sufficiency of Service of Process**

The Court must assess whether the party against whom default judgment is sought was properly served with notice of the action. *Penpower Tech. Ltd. V. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008). A corporation may be served by delivering a copy of the summons and complaint in accordance with state law where the district court is located. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A). Service may be made by delivering a copy of the summons and complaint to a managing or general agent of the defendant. Fed. R. Civ. P. 4(h)(1)(B). Additionally, under California law, service may be made by delivering a copy of the summons and complaint to the "president, chief executive officer, or other head of the corporation[.]" Cal. Code. Civ. Proc. § 416.10(b).

Here, service was sufficient because Plaintiffs properly served James Michael Allivato, Defendant's owner and chief executive officer. (Dkt. No. 11; Dkt. No. 19 ¶¶ 7, 18.) Plaintiffs also served Defendant by mail with a copy of the clerk's Notice of Entry of Default. (Dkt. No. 17; Dkt. No. 19 ¶ 30.)

**B.     Jurisdiction**

### a. Subject Matter Jurisdiction

Pursuant to U.S.C. § 1331, federal courts have jurisdiction over claims arising from federal law. Here, subject-matter jurisdiction is proper because Plaintiffs' complaint arises from federal law, specifically 29 U.S.C. § 1132 and 29 U.S.C. § 185, under which Plaintiffs seek to enforce their benefit plans and Bargaining Agreement. (Dkt. No. 1 ¶¶ 3-5.)

### b. Personal Jurisdiction

For a corporation, general personal jurisdiction exists where it maintains its principal business place. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, personal jurisdiction is proper because Defendant's principal place of business is in San Ramon, California, located in the Northern District of California. (Dkt. No. 1 ¶ 7.)

### C. *Eitel* Factors

In exercising discretion to grant default judgment, courts consider the factors laid out in *Eitel*:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d at 1471–72.

### a. Prejudice to the Plaintiffs

The first factor considers whether the plaintiff will suffer prejudice if the Court declines to enter default judgment, that is, be left without a legal remedy. *GS Holistic, LLC v. MSA-Bossy Inc.*, No. 22-CV-07638-JSC, 2023 WL 3604322 at *3 (N.D. Cal. May 22, 2023).

Plaintiffs allege Defendant violated a contractual duty to report and pay contributions for the mandatory minimum hours under the Subscription Agreement from January 2022 through June 2023, incurring liquidated damages and interest. (Dkt. No. 1 ¶¶ 13-15.) Here, "because [Defendant] did not respond to the complaint, [Plaintiffs'] only recourse ... is default judgment." *GS Holistic, LLC*, 2023 WL 3604322 at *3. As such, there is a high likelihood Plaintiffs will suffer prejudice if default judgment is not granted.

4

**b. Merit of Plaintiffs' Substantive Claims/Sufficiency of the Complaint**

The second and third factors, "often analyzed together," consider whether the facts as pleaded in the complaint address the merits and sufficiency of plaintiff's claims. *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010); *see Eitel*, 782 F.2d at 1471. In analyzing these *Eitel* factors, all well-pleaded allegations regarding liability are accepted as true and deemed admitted. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Consequently, "[t]he district court is not required to make detailed findings of fact." *Id.* at 906.

Plaintiffs state an ERISA claim. (Dkt. No. 1 ¶ 3.) Pursuant to 29 U.S.C. § 1132, a party may bring a civil action against an employer who breaches an agreement without proper written notice of termination at least 60, but no more than 90 days, prior to the end of the agreement. 29 U.S.C. § 1132(a); (Dkt. No. 1 ¶ 3, 5.)

An employer is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). Defendant is an ERISA employer because it hired Sheet Metal Workers Local Union No. 104 members and signed the Bargaining Agreement with the Union establishing an employee benefit plan. (Dkt. No. 1 ¶ 9.) The agreement requires Defendant to make contributions based on hours worked by Defendant's employees, maintain time records, and submit relevant records for Plaintiffs' examination. (Dkt. No. 1 ¶¶ 11-12.) Defendant also agreed to pay liquidated damages and interest on late payments under ERISA § 502(g)(2)(c), 29 U.S.C. § 1132(g)(2)(c).

Defendant breached the agreement because Defendant failed to report and pay contributions for employees' hours worked from January 2022 through June 2023. (Dkt. No. 19 ¶¶ 24-29.) Because Plaintiffs have sufficiently alleged Defendant breached the agreement, they state a claim against Defendant pursuant to 29 U.S.C. § 1132 for violations of ERISA and the Bargaining and Trust Agreements.

**c. Sum of Money**

The fourth factor considers the reasonableness of the sum of money at stake. *See, e.g., J&J Sports Prod., Inc. v. Rafael*, No. CIV S-10-1046 LKK, 2011 WL 445803, at *2 (E.D. Cal. Feb. 8, 2011) (noting courts can consider the sum of money when deciding a default judgment).

The Court analyzes this factor "in relation to the seriousness of [the defendant's] conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Put differently, when the sum "is tailored to the specific misconduct of the defendant, default judgment is appropriate." *Bd. of Trs. v. Core Concrete Constr., Inc.*, No. 11–02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012).

Plaintiffs seek $223,172.18 for Defendant's unpaid contributions, liquidated damages, interest on unpaid contributions, and attorneys' fees and costs. (Dkt. No. 1 ¶¶ 13-15; Dkt. No. 18 at 8-10.) This sum is reasonable because it is based on a contractual formula tailored to Defendant's failure to pay contributions, a formula Defendant does not dispute. (Dkt. No. 1 ¶ 11-12.) While the sum is not nominal, this is because Defendant failed to pay contributions, averaging several thousand dollars a month, for over a year. (Dkt. No. 18-3 ¶ 10; Dkt. No. 19 ¶ 29.) Moreover, courts of this district have awarded damages well above the amount requested by Plaintiffs on a motion for default judgment. *See, e.g.*, *Bd. Of Trs. Of Laborers Health & Welfare Tr. Fund for N. Cal. V. Cal-Kirk Landscaping, Inc.* No. C–08–3292 EMC, 2012 WL 5869619, at *5 (N.D. Cal. Nov. 19, 2012) (awarding $230,130.27 in damages and $35,853.63 in attorneys' fees and costs); *Bank of the W. v. RMA Lumber Inc.*, C 07–06469 JSW, 2008 WL 2474650 (N.D. Cal. June 17, 2008) (awarding $469,760.65 in damages); *United States v. Moss*, C–07–4632 JSW (EMC), 2008 WL 1995116 (N.D. Cal. Apr. 2, 2008) (awarding $306,187.48 in damages). As such, the sum of money at stake favors granting default judgment.

### d. Dispute Regarding Material Facts

The fifth factor requires the Court to consider whether a dispute is possible concerning material facts. *Eitel*, 782 F.2d at 1471-72. Here, a dispute concerning material facts is unlikely.

Having been served with both the complaint and motion for default judgment, Defendant is aware of the pending proceeding and still has not responded. (Dkt. Nos. 11; 17.) In 2022, Defendant responded to a demand letter requesting contributions by claiming it was excused from paying. (Dkt. No. 19 ¶¶ 9-11.) This claim led to an appeal to the Board of Trustees, which confirmed Defendant was not excused from the Subscription Agreement and must report and pay

contributions.  (Dkt. No. 19 ¶ 12.)  As this is the only basis on the record before the Court for Defendant's failure to report and pay contributions, a dispute concerning material facts is unlikely.

Thus, this factor favors entry of default judgment because Defendant is or reasonably should be aware of the lawsuit and yet has not "challenge[d] the accuracy of the allegations in the complaint."  *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

### e. Excusable Neglect

The sixth factor "favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (noting default cannot be attributed to excusable neglect after proper service).  Nothing indicates Defendant's failure to respond is the result of excusable neglect.  Plaintiffs properly served Defendant with the summons and complaint, and the notice of default, yet Defendant is unresponsive.  (Dkt. Nos. 11; 17.)  Moreover, Defendant was made aware its contributions were due pursuant to the Subscription Agreement a year before this action was filed.  (Dkt. No. 19 ¶ 9.)  In December 2022, Defendant communicated with Plaintiffs' counsel regarding outstanding contributions and requested a payment plan.  (Dkt. No. 19 ¶ 14.)  Therefore, the sixth factor favors default because it is unlikely Defendant's failure to respond is the result of excusable neglect.

### f. Policy Favoring a Decision on the Merits

The final *Eitel* factor considers the policy of favoring a decision on the merits.  *Eitel*, 782 F.2d at 1472.  Because public policy favors a decision on the merits, default judgment is inherently undesirable.  *Id.*  However, the policy is one factor weighed among many when granting default judgment.  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  When a defendant fails to answer the complaint it "makes a decision on the merits impractical, if not impossible."  *Id*. at 1178.  Here, given Defendant's failure to answer, a decision on the merits is impossible.  (Dkt. No. 15.)  Because the other *Eitel* factors favor Plaintiffs, the Court is not precluded from granting default judgment despite the policy favoring a decision on the merits.

### g. Liability Following *Eitel* Analysis

1    Taking all the *Eitel* factors into consideration, the factors weigh in favor of default
2    judgment. Plaintiffs will be prejudiced if default judgment is not granted. Plaintiffs plead viable
3    claims, the sum of money in question is reasonable based on the circumstances, there is no
4    apparent dispute of material fact regarding liability, and Defendant's failure to respond is not a
5    result of excusable neglect. In addition, Defendant's request for a payment plan indicates
6    Defendant does not dispute liability. (Dkt. No. 19 ¶ 14.) Therefore, Defendant is liable for the
7    unpaid contributions, liquidated damages, and interest.

**D.    Damages**

On a motion for default judgment, the Court does not accept factual allegations regarding damages as true. *TeleVideo Sys., Inc.*, 826 F.2d at 917 (citing *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)). Instead, claimants are required to prove all damages sought in the complaint (and no more than sought in the complaint). *See* Fed. R. Civ. P. 54(c). "The district court may determine the amount of damages without an evidentiary hearing where 'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *Lasheen v. Embassy of The Arab Republic of Egypt*, 625 F. App'x 338, 341 (9th Cir. 2015) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)). Furthermore, the Court may "establish the truth of any allegation by evidence; or investigate any other matter[]" including declarations and exhibits. Fed. R. Civ. P. 55(b)(2)(c); *see, e.g., Heidarpour v. Empire Cap. Funding Grp. Inc.*, No. 18-CV-00250-YGR, 2018 WL 3455809, at *2 (N.D. Cal. July 18, 2018) (explaining the plaintiff's complaint allegations and additional evidence supplied through declarations was still insufficient).

Here, the complaint allegations and the evidence supplied in support of default judgment justify the damages sought. Plaintiffs have provided multiple declarations by trustees' employees and agents, billing records, copies of contracts, and emails between Plaintiffs and Defendant. (Dkt. Nos. 19; 19-1; 18-1; 18-3, 18-5.)

Plaintiffs originally sought to recover damages for several months of unpaid contributions in 2022 and reserved the right to conduct an audit to determine the exact amount. (Dkt. No. 1 ¶¶ 13-15.) The audit revealed Defendant has failed to pay contributions since January 2022 and, as of the filing of this motion, Defendant owes Plaintiffs $135,981.52 for unpaid contributions. (Dkt.

8

1  No. 19 ¶¶ 24-29; Dkt. No. 18-3 ¶¶ 10-12.)  In addition to unpaid contributions, Defendant owes

2  Plaintiff $32,293.65 in liquidated damages, $7,610.35 in interest, and $17,991.78 in attorneys'

3  fees and costs.  (Dkt. No. 19 ¶¶ 24-29, 41; Dkt. No. 18-3 ¶¶ 10-12.)  In total, Defendant owes

4  Plaintiffs $223,172.18.  (Dkt. No. 19 ¶ 29; Dkt. No. 18-3 ¶¶ 12, 41.)  The chart below details the

5  specific amounts of unpaid contributions, liquidated damages, and interest sought by Plaintiffs.

6  (Dkt. No. 18 at 17-18.)

| Work Month (Estimated*) | Contract No. | Contributions Balance | Liquidated Damages Due | 10 % interest due (thru 7/17/23) | Subtotal of Amounts Due |
|---|---|---|---|---|---|
| Jan-22 | District 2, ER#261152/OM | $5,036.16 | $1007.23 | $703.80 | $6,747.19 |
| Feb-22 | District 2, ER#261152/OM | $5,036.16 | $1007.23 | $665.16 | $6,708.55 |
| Feb-22[2] | District 1, ER#261150 | $0.00 | $484.33 | $0.66 | $484.33 |
| Mar-22 | District 2, ER#261152/OM | $5,036.16 | $1007.23 | $622.38 | $6,665.77 |
| Apr-22 | District 2, ER#261152/OM | $5,036.16 | $1007.23 | $580.98 | $6,624.37 |
| May-22 | District 2, ER#261152/OM | $5,036.16 | $1007.23 | $538.20 | $6,581.59 |
| Jun-22 | District 2, ER#261152/OM | $5,036.16 | $1007.23 | $496.80 | $6,540.19 |
| Jun-22[2] | District 1, ER#261150 | $0.00 | $1511.71 | $0.00 | $1,511.71 |
| Jul-22 | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $473.76 | $6,778.03 |
| Aug-22 | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $429.12 | $6,733.39 |
| Sep-22[2] | District 2, ER#261152/OM | $0.00 | $1050.71 | $0.00 | $1,050.71 |
| Sep-22[2] | District 1, ER#261150 | $0.00 | $4167.46 | $0.00 | $4,167.46 |
| Oct-22* | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $341.28 | $6,645.55 |
| Oct-22* | District 1, ER#261150 | $5,330.60 | $1066.12 | $346.02 | $6,742.74 |
| Nov-22* | District 2, | $5,253.56 | $1050.71 | $298.08 | $6,602.35 |

---

[2] Amounts due for late payments, for which Defendant still owes liquidated damages and interest.

| | | | | | |
|---|---|---|---|---|---|
| | ER#261152/OM | | | | |
| Nov-22* | District 1, ER#261150 | $5,330.60 | $1066.12 | $302.22 | $6,698.94 |
| Dec-22* | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $253.44 | $6,557.71 |
| Dec-22* | District 1, ER#261150 | $5,330.60 | $1066.12 | $256.96 | $6,653.68 |
| Jan-23* | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $208.80 | $6,513.07 |
| Jan-23* | District 1, ER#261150 | $5,330.60 | $1066.12 | $211.70 | $6,608.42 |
| Feb-23* | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $168.48 | $6,472.75 |
| Feb-23* | District 1, ER#261150 | $5,330.60 | $1066.12 | $170.82 | $6,567.54 |
| Mar-23* | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $123.84 | $6,428.11 |
| Mar-23* | District 1, ER#261150 | $5,330.60 | $1066.12 | $125.56 | $6,522.28 |
| Apr-23* | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $80.64 | $6,384.91 |
| Apr-23* | District 1, ER#261150 | $5,330.60 | $1066.12 | $81.76 | $6,478.48 |
| May-23* | District 2, ER#261152/OM | $5,253.56 | $1050.71 | $36.00 | $6,340.27 |
| May-23* | District 1, ER#261150 | $5,330.60 | $1066.12 | $36.50 | $6,433.22 |
| Jun-23* | District 2, ER#261152/OM | $5,253.56 | - | - | $5,253.56 |
| Jun-23* | District 1, ER#261150 | $5,330.60 | - | - | $5,330.60 |
| ***Subtotal*** | | **$153,981.52** | **$32,293.65** | **$7,610.35** | **$175,885.52** |

### a. Unpaid Contributions

Plaintiffs seek $135,981.52 for unpaid contributions from January 2022 to July 2023. (Dkt. No. 18 at 17-18.) Under the Bargaining Agreement, and the Trust Agreements incorporated therein, Defendant is required to regularly pay the Bargained Entities, and the Union, certain sums of money determined by the hours worked by Defendant's employees. (Dkt. No. 1 ¶ 11.) An audit by Plaintiffs found, based on the hours worked by Defendant's employees from January 2022 to July 2023, Defendant owes $135,981.52 in contributions. (Dkt. No. 19 ¶¶ 24-29; Dkt. No. 18-3 ¶¶ 10-12.) Plaintiffs estimate contributions due from October 2022 to July 2023 for one contract. (Dkt. No. 19 ¶ 24-25; Dkt. No. 18-3 ¶ 11.) Under the Subscription Agreement, when an

10

employer fails or refuses to report hours worked, collection procedures allow for estimating the amount due based on the last report submitted, the average of the last three months reported, or the average of the last three months, whichever is greater.  (Dkt. No. 19 ¶ 25.)

### b. Interest

In addition to unpaid contributions, Plaintiffs are entitled to interest.  (Dkt. No 1 ¶ 14.)  The Bargaining and Trust Agreements require Defendant pay interest on delinquent contributions at a rate of 10% per annum calculated from the delinquency date (the day after the due date) until paid.  (Dkt. No. 18-5 ¶ 17.)  Here, because Defendant has failed to pay contributions, interest is calculated from the delinquency date through July 17, 2023.  (Dkt. No. 19 ¶¶ 24-29; Dkt. No. 18-3 ¶¶ 5, 10-12.)  Applying that rate here, Defendant owes Plaintiffs $7,610.35 in interest.  (Dkt. No. 19 ¶ 27; Dkt. No. 18-3 ¶¶ 10-12.)

### c. Liquidated damages

ERISA requires an award of liquidated damages if "(1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989).  These three requirements are satisfied.

First, if this order is adopted, Plaintiffs will have obtained a judgment in their favor.  Second, unpaid contributions are outstanding at the time of suit.  (Dkt. No. 1 ¶ 13.)  Third, the Bargaining Agreement and Trust Agreement provide for liquidated damages assessed at 5% of delinquent contributions, with a minimum of $100.00, on contributions received after the delinquency date.  (Dkt. No. 18-3 ¶ 6; Dkt. No. 19 ¶ 27.)  If contributions are not paid by the 22nd day of the month following the delinquency date, liquidated damages increase to 20% of contributions, with a minimum of $100.00.  (Dkt. No. 18-3 ¶ 6; Dkt. No. 19 ¶ 27.)

Because the three requirements are satisfied, Plaintiffs are entitled to liquidated damages.  Applying the assessment formula detailed above, Defendant owes Plaintiff $32,293.65 in liquidated damages.  (*Id.* at 17-18.)

### d. Attorneys' Fees and Costs

Plaintiffs are entitled to attorneys' fees and costs in the amount of $17,239.50 and $752.28 respectively. (Dkt. No. 19 ¶¶ 40, 41.) Attorneys' fees and costs incurred in an action to recover unpaid contributions and compel an audit are provided under § 502(g)(2) of ERISA. 29 U.S.C. § 1132(g)(2).

Federal courts use the lodestar method to determine a reasonable fee award. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). The "lodestar amount" is the number of hours counsel reasonably spent on the litigation multiplied by a reasonable hourly rate. *Id.*; *see also Credit Managers Ass'n of So. Calif. V. Kennesaw Life and Acc. Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994) (utilizing a lodestar amount analysis).

### i. Reasonableness of the Fee

A reasonable hourly rate is the prevailing rate in the community for similar work performed by attorneys of "comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The Ninth Circuit has found rates between $375-$400 were in line with rates charged by ERISA counsel in 2007. *See, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007).

Plaintiffs' counsels' rates are reasonable because the hourly rate of Plaintiffs' attorneys range from $220-285 per hour. (Dkt. No. 19 ¶ 34.) Plaintiffs submitted declarations detailing the education and experience of the attorneys and paralegals who worked on this matter. (Dkt. No. 19 ¶ 34.) These declarations adequately justify the hourly rate charged by Plaintiffs' counsel. (Dkt. No. 19 ¶ 34.) Moreover, this hourly rate is lower than rates the Ninth Circuit found to be reasonable for an ERISA counsel 15 years ago. *See, e.g., Welch*, 480 F.3d at 947.

Paralegal fees are compensable if "the work is legal rather than clerical in nature." *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2016 WL 7230873 at *7 (N.D. Cal. Dec. 14, 2016) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284-85 (1989)). Clerical tasks include "filing, transcript, and document organization[.]" *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Here, Wood's work is legal in nature, involving tasks such as reviewing files, gathering exhibits, and drafting legal documents. (Dkt. No. 19-1 at 54-71.) Thus, Plaintiffs' paralegal fees are compensable.

12

### ii. Calculations

Applying the lodestar method here, the billing rates and hours of Plaintiffs' counsel in this action are:

(1) Mathew P. Minser ("Minser") of Plaintiffs' counsel worked 0.8 hours from March 19, 2022 – March 31, 2022, during which time the rate was $220.00 per hour, incurring $176.00 in fees. (Dkt. No. 19 ¶¶ 34, 35; Dkt. No. 19-1 at 55.) After March 31, 2022, Minser's legal fees increased to $285.00 an hour. (Dkt. No. 19 ¶ 34.) After the increase Minser worked 10.8 hours, incurring $3,078.00 in fees. (Dkt. No. 19-1 at 55.) In total, Minser worked 11.6 hours, incurring $3,254.00 in fees. (Dkt. No. 19 ¶ 35.)

(2) Luz E. Mendoza of Plaintiffs' counsel worked 42 hours, at a rate of $265.00 per hour, incurring a total of $11,130.00 in fees. (Dkt. No. 19 ¶¶ 34, 36.)

(3) Tino X. Do of Plaintiffs' counsel worked 4.5 hours at a rate of $285.00 per hour, incurring a total of $1,282.50 in fees. (Dkt. No. 19 ¶¶ 34, 37.)

(4) Alicia Wood ("Wood") a paralegal for Plaintiffs' counsel, worked 1.1 hours from March 19, 2022 – March 31, 2022, during which time the rate was $125.00 per hour, incurring $137.50 in fees. (Dkt. No. 19 ¶¶ 34, 38; Dkt. No. 19-1 at 55.) After March 31, 2022, Wood's fee increased to $165.00 per hour. (Dkt. No. 19 ¶ 35.) After the increase, Wood worked 8.7 hours, incurring $1435.50 in fees. (Dkt. No. 19-1 at 55.) In total, Wood worked 9.8 hours, incurring $1,573.00 in fees. (Dkt. No. 19 ¶ 38.)

In total, Plaintiffs' counsel seeks $17,239.50 in attorney's fees. (Dkt. No. 18 at 30.) Additionally, Plaintiffs' request costs incurred in the amount of $752.28, for paying a process server for multiple attempts to serve Defendant. (Dkt No. 19 ¶¶ 40-41; Dkt. No. 19-1 at 82.) In total, for both attorneys' fees and costs Plaintiffs seek $17,991.78.

In reaching the hourly lodestar amount, the Court "should exclude hours that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (cleaned up). Based on the documents provided by Plaintiffs, nothing indicates the hours charged were in some way unnecessary. Although Plaintiffs claim many hours, the hours are

13

reasonable given the work performed communicating with Defendant before filing this motion, including the appeal to the Board of Trustees, and the audit. (Dkt. No. 19 at 18-20.)

### iii. Evidence

Plaintiffs should provide evidence regarding the number of hours worked and hourly rate of the legal team. *McCown*, 565 F.3d at 1102. Here, Plaintiffs have satisfied the evidentiary requirement by submitting detailed billing statements, declarations, and supporting documents, including explanations relating to expertise and community standards. (Dkt. No. 19-1 at 54-82; Dkt No. 19 ¶¶ 33-42.)

In conclusion, Plaintiffs adequately support their request for attorneys' fees and costs in the amount of $17,991.78, which is reasonable given the facts and circumstances.

### CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for default judgment and award Plaintiffs $175,885.52 in damages, $17,239.50 in attorneys' fees, and $752.28 in costs, for a total judgment of $223,172.18.

**IT IS SO ORDERED.**

This Order disposes of Dkt. No. 18.

Dated: September 27, 2023

JACQUELINE SCOTT CORLEY
United States District Judge